J-A03020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L.M.K. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| R.J.K. | |
| APPEAL OF: L.M.K. AND B.J. (INTERVENOR) | No. 1357 MDA 2014 |

Appeal from the Order entered July 21, 2014,
in the Court of Common Pleas of Snyder County,
Civil Division, at No: CV-123-2009

BEFORE: MUNDY, STABILE, and FITZGERALD,* JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 13, 2015**

L.M.K. (Mother) and B.J. (Maternal Grandmother) (collectively, Appellants) appeal from the order entered July 21, 2014, in the Court of Common Pleas for the 17th Judicial District (Snyder County Branch), which denied Mother's petition for modification of custody, in which she requested supervised visitation of her minor children, S.M.K., a female born in August of 2005; R.J.K., a male born in June of 2007; K.T.K., a female born in June of 2007; and L.M.K., a female born in September of 2009 (collectively, the Children). After careful review, we vacate and remand for further proceedings consistent with this memorandum.

---

* Former Justice assigned to the Superior Court.

In approximately December of 2008, Mother accused her then-husband R.J.K. (Father) of sexually abusing their oldest child, S.M.K. Mother's claim was investigated and ultimately deemed to be unfounded.[1] On March 3, 2009, Mother initiated a custody action by filing a complaint for custody with respect to the parents' three oldest children. An order was entered on April 28, 2009, awarding the parents shared legal custody, and awarding Father partial physical custody. On February 16, 2010, an order was entered awarding Father partial physical custody with respect to the parents' youngest child, L.M.K., who was born after the entry of the initial custody order.

Meanwhile, although the details are not clear from the record, Mother persisted in attempting to prove that Father had committed sexual abuse. It appears that Mother's efforts caused her to run afoul of a court order, resulting in a conviction of indirect criminal contempt, and a three-and-a-half month jail sentence starting in June of 2010. The certified record contains copies of an order, dated September 22, 2010, which revoked Mother's probation, sentenced her to another period of probation, and ordered that Mother was to have no contact with the Children.

---

[1] On February 17, 2010, Mother filed a petition for custodial evaluation requesting that Dr. Jacqueline Sallade be permitted to conduct an investigation into whether sexual abuse had occurred, or was occurring, in Father's home. Dr. Sallade's report is contained in the certified record, and states that Mother's claims of sexual abuse are "extremely likely to have been fabricated." Dr. Sallade's Report, 5/17/10, at 2-3.

On November 10, 2011, an order was entered awarding Mother supervised visitation with L.M.K. only. Mother filed a petition for modification of custody on July 19, 2012, requesting supervised visitation with all four of the Children. An order was entered on September 7, 2012, indicating that Mother had withdrawn her petition for modification, and that the court would "explore the retaining of an expert witness to undertake such evaluation as may be deemed to be appropriate of the parties and the children in this matter . . . ."

On November 20, 2012, an order was entered appointing Dr. Anthony G. Butto to conduct a custody evaluation. In his evaluation, dated March 25, 2013, Dr. Butto concluded that Mother's visits with L.M.K. should cease. Dr. Butto further concluded that Mother should not be permitted to visit with any of the Children until she has sufficiently improved her mental health, and until the Children have been prepared to be reintroduced to her. Dr. Butto provided a variety of recommendations for both Mother and the court to follow. On April 3, 2013, Father filed a petition for special relief, requesting that Mother's visitation with L.M.K. be ended in light of Dr. Butto's conclusions. By order entered April 24, 2013, Mother was prohibited from having further visitation with any of the Children. The order indicated that Mother had agreed to this arrangement.

On August 9, 2013, Mother filed a petition for modification of custody, in which she again requested supervised visitation with all four Children.[2] On September 25, 2013, Maternal Grandmother filed a petition to intervene, which was granted by an order entered on November 13, 2013. A hearing was held on July 16, 2014, during which the court heard the testimony of Mother's friend, S.H.; Mother's psychiatrist, Dr. Keith Tolan; and Mother. Following the hearing, on July 21, 2014, the trial court entered an order denying Mother's petition. Appellants timely filed a joint notice of appeal, along with a concise statement of errors complained of on appeal on August 12, 2014.[3]

Appellants now raise the following issue for our review. "Whether the trial court erred in failing to grant [Mother] periods of supervised partial physical custody of her children when such periods are in the best interest of the children[?]" Appellants' brief at 4.

We address Appellants' claim mindful of our well-settled standard of review.

---

[2] While Mother used the term "supervised visitation," in her petition for modification, it is clear that she was referring to supervised physical custody. Supervised physical custody is defined as "[c]ustodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights." 23 Pa.C.S.A. § 5322(a).

[3] It is not clear why Maternal Grandmother appealed from the order denying Mother's petition for modification. Appellants' brief does not present any issues or arguments with respect to Maternal Grandmother.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**V.B. v. J.E.B.**, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." **S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

        (16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

        Instantly, the trial court concluded that awarding Mother supervised visitation would not be in the best interests of the Children. Trial Court Opinion, 8/22/14, at 2 (unpaginated). The court reasoned that Mother had failed to follow the recommendations contained in Dr. Butto's report. *Id.* at 2-3. In response, Appellants present several arguments. First, Appellants contend that the trial court erred by failing to consider the Section 5328(a) custody factors, listed *supra*. Appellants' brief at 12-13. We agree.

        It is well-settled that the Child Custody Act requires courts to consider each of the Section 5328(a) factors when "ordering any form of custody." 23 Pa.C.S.A. § 5328(a). "Mere recitation of the statute and consideration of the § 5328(a) factors *en masse* is insufficient." **S.W.D.**, 96 A.3d at 401 (citing **C.B. v. J.B.,** 65 A.3d 946, 950 (Pa. Super. 2013)), *appeal denied*, 70 A.3d 808 (Pa. 2013)). A court must "set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal." **C.B.**, 65 A.3d at 955.

        In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with [the Child Custody Act].

-7-

***A.V. v. S.T.***, 87 A.3d 818, 823 (Pa. Super. 2014) (citations and quotation marks omitted).

In ***S.W.D.***, this Court explained that consideration of the Section 5328(a) factors may be necessary even when a court denies a petition to modify. ***S.W.D.***, 96 A.3d at 406. In such cases, the key question is whether the petition to modify requests a change to the underlying form of custody. ***Id.*** ("Even if the trial court only reaffirmed its prior order, it nonetheless was ruling upon a request to change the form of physical custody and, therefore, bound to decide whether the prior order remained in [the c]hild's best interest.").

Here, Mother filed a petition to modify custody, in which she requested that the underlying form of custody be changed. Specifically, she requested periods of supervised physical custody, when she previously had been awarded no custody. Therefore, the court was required to review the Section 5328(a) factors. Our review of the record confirms that the court failed to do so. Specifically, the court did not address these factors at the conclusion of the July 16, 2014 custody hearing, nor did it address them in its opinion pursuant to Pa.R.A.P. 1925(a). Accordingly, we must vacate the court's order and remand this matter for the preparation of a new order and opinion in compliance with ***S.W.D.*** Upon remand, the trial court is directed

to issue a new order and opinion within forty-five days of the date of this memorandum.[4]

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2015

---

[4] In light of our conclusion that this case must be remanded for a new order and opinion, we do not address Appellants' remaining arguments at this time. Without a proper opinion considering each of the Section 5328(a) factors, we are unable to determine if the court abused its discretion by denying Mother supervised physical custody.